# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
SCOTT A. HOERTH,                            \*
                                            \*   No. 19-1016V
          Petitioner,                       \*   Special Master Christian J. Moran
                                            \*
v.                                          \*
                                            \*   Filed: July 29, 2020
SECRETARY OF HEALTH                         \*
AND HUMAN SERVICES,                         \*
                                            \*   Finding of Facts
          Respondent.                       \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Jerold L. Leichsenring, Krueger & Hernandez S.C., Middleton, WI, for petitioner;
Adriana R. Teitel, United States Dep't of Justice, Washington, DC, for respondent.

**UNPUBLISHED RULING FINDING FACTS**[1]

      Scott Hoerth alleges that an influenza vaccination he received on December 6, 2016, caused him to develop right shoulder pain and weakness that eventually resulted in a Parsonage-Turner syndrome diagnosis. Am. Pet., filed June 5, 2020, at 1. The parties dispute when Mr. Hoerth began to experience right shoulder pain and weakness. A hearing was held via video conferencing on June 23, 2020, to resolve the factual dispute regarding onset. See Campbell v. Sec'y of Health & Human Servs., 69 Fed. Cl. 775, 779-80 (2006) (noting the efficacy of holding a hearing in cases where testimony and medical records conflict). Mr. Hoerth testified at the hearing along with his wife, Melissa Wheeler, and his brother, Chad Hoerth. The undersigned has considered all the evidence including the testimony from that hearing.

      Pursuant to well-established standards for determining when events did or did not happen, see Sanchez v. Sec'y of Health & Human Servs., No. 11-685V, 2013 WL 1880825, at \*2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013), mot. for rev. denied, 142 Fed. Cl. 247, 251-52 (2019), vacated on other grounds and remanded, 809 Fed. Appx. 843 (Fed. Cir. Apr. 7, 2020), the undersigned finds how the evidence preponderates. In setting forth the findings, the undersigned also cites to the primary evidence that is the basis for the finding. The undersigned recognizes

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website (https://www.uscfc.uscourts.gov/aggregator/sources/7). This posting will make the decision accessible to anyone via the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

that not all evidence is entirely consistent with these findings.  See Doe 11 v. Sec'y of Health & Human Servs., 601 F.3d 1349, 1355 (Fed. Cir. 2010) (ruling that the special master's fact-finding was not arbitrary despite some contrary evidence).  Indeed, it is the presence of inconsistent evidence that dictated a proceeding to resolve factual disputes.

After considering the witnesses' testimony as well as the documentary evidence, the undersigned finds that **Mr. Hoerth's right shoulder pain began on November 27, 2016, and worsened on March 18, 2017, after he performed exercises involving his upper body**.  The primary reasons supporting this finding are as follows:

1. Mr. Hoerth received a flu vaccine on December 6, 2016.  Mr. Hoerth's first medical appointment after the vaccination was on March 20, 2017.

2. In the March 20, 2017 medical appointment, Mr. Hoerth reported the onset of his shoulder pain to two people at an urgent care clinic.  Mr. Hoerth first reported to a medical assistant a "top of shoulders discomfort 4 months ago after sleeping on an air mattress for a few days." Exhibit 4 at 6.  Mr. Hoerth had "work[ed] out this weekend with weights, push ups, pull ups and that evening had right upper back discomfort." Id.  Mr. Hoerth then reported to a physician's assistant that he had a "4 month history of right shoulder pain" and stated that "he may have slept on [his right shoulder] wrong 4 months ago." Id. at 5.  Due to an "intense upper body workout" over the weekend, Mr. Hoerth began to experience more pain in his right upper back.  Id.  The physician's assistant assessed Mr. Hoerth as having a trapezius strain and rotator cuff tendonitis.  Id.  Four months before March 20, 2017, is November 20, 2016.

3. At Mr. Hoerth's second medical appointment after the vaccination on April 6, 2017, he saw Dr. David Bernhardt, a specialist in sports medicine.  Dr. Bernhardt recorded that Mr. Hoerth complained of a "6-month history of shoulder pain which became suddenly worse a couple of weeks ago when he was doing a functional fitness class" in which he "was doing burpees." Exhibit 4 at 21.  Dr. Bernhardt had the impression that Mr. Hoerth suffered a rotator cuff tendon tear but ordered MRI images and an EMG study to confirm.  Id.  Six months before April 6, 2017, is October 6, 2016.

4. On July 11, 2017, Mr. Hoerth saw Dr. John Orwin, a specialist in orthopedic sports medicine, who was accompanied by a trained medical scribe.  Exhibit 4 at 30.  Via the trained medical scribe, Dr. Orwin recorded that Mr. Hoerth was there for an "evaluation of right shoulder pain and weakness that started 9 months ago.  In November [2016] [Mr. Hoerth] noticed dull pain and weakness in his shoulder without a specific event or injury." Id. at 27.  Dr. Orwin appears to have asked Mr. Hoerth whether he had received any vaccinations during the past winter, but no related assessments are noted.  Id.  Based on the MRI images, the EMG study, and his examination, Dr. Orwin opined that Mr. Hoerth had Parsonage-Turner syndrome and acromioclavicular joint arthritis but did not have a rotator cuff tear.  Id. at 25, 29.  On the same day, a licensed athletic trainer obtained a history from Mr. Hoerth who reported an "onset of shoulder pain 9 months ago, worse since end of March [2017] after doing burpee exercises during a functional fitness class." Id. at 30.  Nine months before July 11, 2017, is October 11, 2016.

5. These three medical records based on Mr. Hoerth's reports to five different medical professionals are consistent about the onset of Mr. Hoerth's right shoulder pain in October or November 2016 and the worsening of his right shoulder pain following a workout around March 20, 2017.

6. Mr. Hoerth contends that these medical records are not accurate in regard to his reports about when his right shoulder pain began. Exhibit 3 (Affidavit) ¶ 6; Tr. 18, 58-59, 64, 66-67, 69.

7. Mr. Hoerth's explanation for why the medical records are not accurate differed. For the first medical appointment on March 20, 2017, the record says that Mr. Hoerth reported his right shoulder pain began four months earlier (November 20, 2016). Exhibit 4 at 6. In his testimony, Mr. Hoerth admitted that the medical record accurately recorded what he said. However, Mr. Hoerth challenged his own recollection by stating that the time he provided on March 20, 2017, was only an estimate. Exhibit 3 ¶ 4; Tr. 18, 57. An assertion that, in June 2020, Mr. Hoerth would more accurately recollect events that occurred in the fall 2016 than how he would remember those events in March 2017 is fundamentally unpersuasive.

8. Mr. Hoerth took a different position regarding the accuracy of the remaining medical records. In answering a leading question from his counsel, Mr. Hoerth challenged the consistency of the medical records on the basis that each subsequent medical professional merely copied the medical history of the previous appointment, passing along the initial incorrect estimate regarding onset (4-month history of pain → 6-month history of pain → 9-month history of pain). Tr. 74. However, the logic of this challenge does not hold because the three appointments each suggest a different date: March 20, 2017, 4-month history (November 20, 2016); April 6, 2017, 6-month history (October 6, 2016); July 11, 2017, 9-month history (October 11, 2016). Moreover, each of the five recordings of the onset of Mr. Hoerth's shoulder pain across three appointments is phrased differently and has a different grammatical structure. These differences minimize the possibility that later medical professionals were merely copying and pasting previous medical histories verbatim. Even if this critique of the medical records was credible, Dr. Orwin also recorded Mr. Hoerth explicitly reporting his shoulder pain beginning in "November [2016]." Exhibit 4 at 27.

9. While Mr. Hoerth now attests that a pain he had never experienced before in his right shoulder began a day or two after the vaccination, he only connected that pain to the vaccination in "hindsight." Exhibit 3 ¶ 4. At the time, Mr. Hoerth did not associate the onset of right shoulder pain with any particular events or dates. Id. Ms. Wheeler stated that Mr. Hoerth first mentioned his shoulder pain in early December 2016 but testified, "I don't necessarily know that [Mr. Hoerth] is in pain unless I see something on his face. He doesn't talk about it." Exhibit 9 ¶ 2; Tr. 80. Chad Hoerth heard from Mr. Hoerth in April 2017 that his shoulder pain began in "late 2016." Exhibit 10 ¶ 5; Tr. 107-08.

3

10. Mr. Hoerth and Ms. Wheeler first connected the shoulder pain to a November 2016 deer hunting trip during which Mr. Hoerth slept on an air mattress. Tr. at 16, 19-20, 80; exhibit 4 at 5-6. The relevant Wisconsin deer hunting season ran from November 19 to November 27, 2016, with Thanksgiving occurring on November 24, 2016.[2] None of the witnesses remember Mr. Hoerth complaining of shoulder pain or appearing to be in pain on Thanksgiving. Tr. 51, 93, 110-11. While Mr. Hoerth may have done some hunting before Thanksgiving, it is more certain that Mr. Hoerth hunted the weekend after Thanksgiving. Tr. 75, 84, 110, 113.

11. Mr. Hoerth received a flu vaccination in his left shoulder during the fall of 2017 without incident. Exhibit 2 at 9; exhibit 3 ¶ 7; Tr. 21, 71. Mr. Hoerth did not come to the conclusion that the 2016 flu vaccination caused his shoulder pain until after another flu vaccination in the fall of 2018. Exhibit 3 ¶ 7; exhibit 13 ¶ 7; Tr. 21.

12. Accordingly, ample evidence supports a finding that Mr. Hoerth experienced shoulder pain before the vaccination. Although the evidence regarding the precise day of onset is not entirely consistent, the weight of the evidence supports an onset date of November 27, 2016.

The undersigned has considered all evidence, documentary as well as testimonial. Although the testimony was generally offered sincerely, the value of testimony offered about events occurring years earlier is diminished by the passage of time. As such, the oral testimony did not outweigh the medical records created closer in time to November 2016.

If the parties retain any witnesses to opine about causation, the parties must present this Ruling to any potential experts. See Burns v. Sec'y of Health & Human Servs., 3 F.3d 415 (Fed. Cir. 1993).

Any questions may be directed to my law clerk, Andrew Schick, at (202) 357-6360.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

[2] 2016 Wisconsin Deer Hunting Summary, Wisconsin Department of Natural Resources (https://dnr.wi.gov/topic/WildlifeHabitat/documents/reports/deerharve16.pdf), filed concurrently as Court Exhibit 1001.