# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
SCOTT A. HOERTH,                    *
                                    *   No. 19-1016V
                                    *   Special Master Christian J. Moran
                                    *
            Petitioner,              *   Filed: July 20, 2021
                                    *
v.                                   *
                                    *   Attorneys' fees and costs; reasonable
SECRETARY OF HEALTH                  *   basis; onset of shoulder injury.
AND HUMAN SERVICES,                  *
                                    *
            Respondent.              *
* * * * * * * * * * * * * * * * * * * *

Stephanie A. Thompson, Krueger & Hernandez S.C., Middleton, WI, for petitioner;
Adriana R. Teitel, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS**[1]

Scott Hoerth alleged that an influenza ("flu") vaccine he received on December 6, 2016, caused him to suffer right shoulder pain resulting in Parsonage-Turner Syndrome. Am. Pet. ¶¶ 2, 8. The parties disputed the timing of onset and the undersigned ruled that "Mr. Hoerth's right shoulder pain began on November 27, 2016, and worsened on March 18, 2017, after he performed exercises involving his upper body." Hoerth v. Sec'y of Health & Human Servs., No. 19-1016V, 2020 WL 5230358, at *1 (Fed. Cl. Spec. Mstr. July 29, 2020).

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Anyone will be able to access this decision via the internet (https://www.uscfc.uscourts.gov/aggregator/sources/7). Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website

Mr. Hoerth filed a motion for voluntary dismissal, resulting in an order concluding proceedings. He then filed a motion for attorneys' fees and costs, arguing that because a reasonable basis supported the claim set forth in his petition, he was eligible to receive attorneys' fees and costs as the Vaccine Act permits. The Secretary, however, disagreed, maintaining that Mr. Hoerth did not have a reasonable basis. Adjudication of Mr. Hoerth's motion was deferred while the Federal Circuit considered the factors contributing to an analysis of reasonable basis. The Federal Circuit provided additional guidance in <u>Cottingham v. Secretary of Health & Human Services</u>, 971 F.3d 1337 (Fed. Cir. 2020). The parties address the impact of <u>Cottingham</u> in a second round of briefs. The Federal Circuit then issued another decision regarding the reasonable basis standard in <u>James-Cornelius v. Secretary of Health & Human Services</u>, 984 F.3d 1374 (Fed. Cir. 2021). The parties were afforded the opportunity submit additional briefs in light of this most recent decision.

Mr. Hoerth does not qualify for an award of attorneys' fees because he has failed to establish a reasonable basis for the assertion that Mr. Hoerth received the vaccine within a medically acceptable time frame after vaccination to support causation. Accordingly, his motion for attorneys' fees and costs is DENIED.

## I.  **Procedural History**

Mr. Hoerth filed his petition on July 16, 2019, alleging that the flu vaccination he received on December 6, 2016, caused him to suffer right shoulder pain resulting in Parsonage-Turner Syndrome. Pet. ¶¶ 2, 8. After collecting and filing medical records and affidavits over the course of multiple months, as well as a final amended petition, Mr. Hoerth filed a statement of completion on June 9, 2020. During this time, the parties also identified a dispute regarding the onset of Mr. Hoerth's right shoulder pain and scheduled a fact hearing to resolve this issue.

An onset hearing was held on June 23, 2020. Mr. Hoerth, along with his wife Melissa Wheeler and his brother Chad Hoerth, testified. In a fact ruling issued on July 29, 2020, the undersigned found that Mr. Hoerth's right shoulder pain began on November 27, 2016, and worsened on March 18, 2017, after Mr. Hoerth performed upper body exercises. <u>Hoerth</u>, 2020 WL 5230358, at *1.

In light of this fact finding, which established onset as occurring prior to vaccination, Mr. Hoerth elected to move for a voluntary dismissal. Pet'r's Status Rep., filed Aug. 19, 2020, at 1. Mr. Hoerth filed a motion for voluntary dismissal

on August 20, 2020, and the undersigned issued an order concluding proceedings on September 1, 2020.

Mr. Hoerth then filed a motion for attorneys' fees and costs on November 18, 2020. The Secretary filed a response on December 2, 2020, deferring to the undersigned regarding the question of attorneys' fees. Mr. Hoerth filed a reply on December 8, 2020. On December 8, 2020, the undersigned ordered the Secretary to file a response taking a position on the issue of reasonable basis. The Secretary filed his supplemental response on January 4, 2021, contesting reasonable basis, and Mr. Hoerth filed a reply on January 11, 2021. This second round of briefs also addressed the impact of the then recent decision in Cottingham. After the decision in James-Cornelius was issued on January 8, 2021, the parties were afforded an opportunity to submit supplemental briefs regarding reasonable basis considering this new precedent. Mr. Hoerth filed his supplemental brief on March 22, 2021. The Secretary filed his response on April 13, 2021. Thus, the matter is now ripe for adjudication.

## II.   **Standards for Adjudication**

Petitioners who have not been awarded compensation (like Mr. Hoerth here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa—15(e)(1). As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017). Here, the Secretary has not raised a challenge to Mr. Hoerth's good faith. Thus, the disputed issue is reasonable basis.

In Cottingham, the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard." Something "more than a mere scintilla" might establish the reasonable basis standard. 917 F.3d at 1356. Petitioners meet their evidentiary burden with "objective evidence." Id. at 1344. In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." Id. at 1346. Finally, the Federal Circuit in Cottingham specified that "[w]e make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court." Id. at 1347.

3

In its most recent opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. James-Cornelius v. Sec'y of Health & Human Servs., 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." Id. at 1379 (citing Cottingham, 971 F.3d at 1346). These two most recent decisions guide the analysis regarding what types of evidence constitute objective evidence of reasonable basis, as originally articulated in Simmons, though the ultimate weighing of such evidence is left up to the special master.

### III.  Analysis

Preliminarily, the outcome of the Fact Ruling does not control the result of Mr. Hoerth's pending motion for attorneys' fees and costs. The Fact Ruling weighed the evidence regarding onset according to the preponderance of the evidence standard. However, the evidentiary standard for determining reasonable basis is less than the preponderance of the evidence. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6324660, at *12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), mot. for rev. denied, 116 Fed. Cl. 276 (2014).

However, the analysis in the Fact Ruling regarding the weight of different pieces of evidence is instructive here, given that the undersigned must consider and weigh objective evidence to determine if Mr. Hoerth has met the reasonable basis standard. The two competing categories of evidence in this case are (1) Mr. Hoerth's medical records, which include multiple reports to treating doctors regarding the onset of his shoulder pain, and (2) affidavits submitted by Scott Hoerth, Chad Hoerth, and Melissa Wheeler. The content of these two types of evidence conflict as to whether Mr. Hoerth's shoulder pain began post-vaccination.

To his doctors, Mr. Hoerth consistently reported an onset that places the beginning of his shoulder pain in October or November 2016 (before vaccination) at three separate medical appointments. On March 20, 2017, Mr. Hoerth reported to a medical assistant and a physician's assistant at an urgent care clinic that he experienced shoulder pain as a result of sleeping on his shoulder wrong beginning "4 months ago." See exhibit 4 at 5-6. On April 6, 2017, Mr. Hoerth reported to sports medicine specialist Dr. David Bernhardt a "6-month history of shoulder pain which became suddenly worse a couple weeks ago when he was doing a functional fitness class," again consistently placing onset of his shoulder pain around October/November 2016. Id. at 21. Finally, on July 11, 2017, Mr. Hoerth reported to orthopedic sports medicine specialist Dr. John Orwin "right shoulder pain and

weakness that started 9 months ago" and that he "noticed dull pain and weakness in his shoulder without a specific event or injury." Id. at 27.  Again, this places onset in approximately October/November 2016.  Thus, Mr. Hoerth consistently reported that his right shoulder pain began before vaccination and never attributed his symptoms to the vaccination.

Furthermore, though Mr. Hoerth argued that medical providers merely copied his medical history over from appointment to appointment, this is unpersuasive given the unique notations in each subsequent record that backtracks from each appointment to approximately October/November 2016 (e.g., 4-month history in March, 6-month history in April, and 9-month history in July).  Medical records in which multiple treating doctors over the course of multiple months noted Mr. Hoerth's reports of pre-vaccination shoulder pain are highly persuasive both because of the reliability of contemporaneous medical records and because of the particular consistency of reporting in this case.  In general, contemporaneously created medical records are considered reliable and persuasive evidence.  See Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993) (finding that medical record evidence more persuasive than testimony and stating "[m]edical records, in general, warrant consideration as trustworthy evidence").

Mr. Hoerth counters this evidence by pointing to the two affidavits submitted by Chad Hoerth and Melissa Wheeler, in asserting that he has met the reasonable basis standard.  He argues that these affidavits should not be afforded less weight than the medical records in weighing evidence.  See Pet'r's Supp. Br., filed Mar. 22, 2021, at 3.  However, these affidavits, which were prepared three years after Mr. Hoerth's vaccination and whose content is relatively weak in showing a post-vaccination onset, are simply not as valuable as the contemporaneous medical records created within six months of onset and vaccination.

First, Chad Hoerth stated in his affidavit that he heard from Mr. Hoerth in April 2017 that his shoulder pain began in "late 2016."  Exhibit 10 ¶ 5.  This does little to place the onset after vaccination, as Mr. Hoerth appears not to have attributed the shoulder pain to the vaccination in speaking with Chad Hoerth and his report of the pain beginning in "late 2016" is still consistent with an onset of October/November 2016 as reflected in the medical records.

Second, Melissa Wheeler stated in her affidavit that Mr. Hoerth first mentioned shoulder pain to her in December 2016, but stated that she "do[es]n't necessarily know that [Mr. Hoerth] is in pain unless [she] see[s] something on his face.  He doesn't talk about it."  Exhibit 9 ¶ 2.  Therefore, it is likely given her

5

characterization that Mr. Hoerth may not have reported his symptoms to her exactly when they began. He also appears not to have attributed his symptoms to his vaccination when speaking with Ms. Wheeler. Therefore, the affidavits do not provide persuasive evidence showing a post-vaccination onset.

In addition to the affidavits from Mr. Chad Hoerth and Ms. Wheeler, Mr. Hoerth also submitted his own affidavit. While Mr. Hoerth does not emphasize his own testimony, the undersigned has considered petitioner's testimony as well. Mr. Hoerth's testimony about the onset of his shoulder pain is again outweighed by the multiple contemporaneous medical records reflecting reports of pre-vaccination shoulder pain. In his affidavit, Mr. Hoerth stated that he began to experience pain within a day or two of the vaccination, which he attributed to the vaccination only in hindsight. Exhibit 3 ¶ 4. He also did not dispute the accuracy of the reports in his medical records, instead stating that, although he reported the pain had started in early winter, he "do[es] not believe [he] indicated it was before the vaccine." Id. ¶ 6 (emphasis in original). This contention still does not amount to any *affirmative* evidence in the medical records that Mr. Hoerth's pain began after vaccination. In fact, the medical records conflict with Mr. Hoerth's testimony and, for the reasons explained in this decision, continue to outweigh both Mr. Hoerth's and his witnesses' affidavits.

Likewise, the oral testimony in the June 23, 2020 hearing does not carry Mr. Hoerth's burden to establish a reasonable basis for the petition's assertion that his shoulder pain developed after (and was caused by) his vaccination. Again, this burden is lower than the preponderance of the evidence standard. While his oral testimony was more-or-less consistent with his affidavit, the oral testimony revealed additional weaknesses.[2] For example, Mr. Hoerth acknowledged people's memories are more accurate closer in time to when the events occurred. Tr. 22, 64. He admitted to not remembering details about his activities in the relevant time. See Tr. 38. More importantly, Mr. Hoerth did not provide any persuasive reason for finding the reports medical personnel created were inaccurate. See Tr. 64-67.

The three affidavits submitted by Mr. Hoerth as well as the oral testimony from the witnesses during the hearing constitute evidence of reasonable basis. See James-Cornelius, 984 F.3d at 1379-81. As such, the undersigned has duly considered the affidavits and testimony in determining whether Mr. Hoerth has established reasonable basis. However, to the extent that different pieces of objective evidence conflict, the undersigned must assess the relative weight of these pieces of evidence in making this determination. See Cottingham, 971 F.3d

---

[2] Mr. Hoerth's demeanor suggested that he was hesitant and/or reserved in his testimony.

at 1347.  Here, the persuasiveness of the medical records greatly outweighs that of the affidavits and oral testimony upon which Mr. Hoerth relies.  Furthermore, the consistency of the medical records in this case as to the onset of Mr. Hoerth's shoulder pain only add to their reliability and persuasiveness.  Thus, as detailed in the Fact Ruling, the undersigned credits the medical records and weighs them more heavily than the affidavits and oral testimony in showing that Mr. Hoerth's shoulder pain began before vaccination.  Because these records also so clearly show a pre-vaccination onset date, the undersigned therefore finds that Mr. Hoerth has not satisfied the reasonable basis standard.

 A finding that Mr. Hoerth's case lacked a reasonable basis is consistent with an appellate authority with similar facts.  See Murphy v. Sec'y of Health & Human Servs., No. 90-882V, 1991 WL 74931 (Cl. Ct. Spec. Mstr. Apr. 25, 1991).  Today, Murphy is often cited as a well-known case in which a special master weighed the value of medical records created contemporaneously with the events the medical records described against the value of affidavits created many years later.  The special master found that the medical records were more reliable, id. at *5, and the Claims Court ruled that this finding was not arbitrary.  23 Cl. Ct. 726, 734 (1991), aff'd, 968 F.2d 1226 (Fed. Cir. 1992).  Under the representations presented in the contemporaneously created medical records, the petitioners in Murphy were not entitled to compensation.

 A less recognized aspect to Murphy is the ensuing motion for attorneys' fees and costs, which is more relevant to the case at hand.  Although the special master's 1993 decision denying an award of attorneys' fees and costs is unpublished, the opinion on a motion for review states the special master found a lack of reasonable basis because "the medical records and other written records contradict the claims brought forth in the petition." 30 Fed. Cl. 60, 61 (1993).  Upon a motion for review, the petitioners argued that the special master abused his discretion in denying attorneys' fees and costs.  More specifically, the petitioners argued that "because they submitted expert opinion to support their claim, they had a reasonable basis for their case as a matter of law." Id. at 62.

 The Court, however, rejected the petitioners' argument and ruled that the special master was not arbitrary in finding a lack of reasonable basis.  The Court reasoned that an expert report premised on unreliable assertions does not confer reasonable basis:

> [The petitioners'] position assumes that special masters rely upon expert testimony without determining whether it is corroborated by the facts. This position is not plausible, as expert testimony in and of

> itself does not determine reasonableness. . . . [T]he expert opinion submitted by petitioners was founded upon Mrs. Murphy's version of the events, a version found to be unreliable by the special master.

Id. at 63.

While neither the special master's decision nor the opinion denying the motion for review from the judge of the Court of Federal Claims constitutes binding authority, see Boatmon v. Sec'y of Health & Human Servs., 941 F.3d 1351, 1358 (Fed. Cir. 2019), Murphy does provide some appellate guidance. According to Murphy, a discrepancy between medical records created contemporaneously and later-given assertions could, in some cases, weigh against a finding that reasonable basis supported the claim set forth in the petition. This guidance points against a finding of reasonable basis in Mr. Hoerth's case.[3]

The Vaccine Act recognizes that a special master might credit an assertion that a vaccinee developed a medical condition at a time other than the time shown in the medical records. 42 U.S.C. § 300aa–13(b)(2). Thus, the Vaccine Act does not prohibit Mr. Hoerth's assertion that he developed a shoulder problem earlier than the time listed in his medical records. Mr. Hoerth's attempt to take advantage of this opportunity appears to be in good faith.

However, good faith differs from reasonable basis. The reasonable basis inquiry, as emphasized in Simmons, is "objective." 875 F.3d at 635. An evaluation of reasonable basis necessarily involves weighing the value of evidence. See Cottingham, 971 F.3d at 1347.

The evidence in the present case does not support a finding of reasonable basis. Needless to say, when the evidence differs, the result might differ. Accordingly, the undersigned is *not* ruling that whenever a petitioner fails to establish the onset of a shoulder injury closely followed a vaccination, the petitioner necessarily lacked a reasonable basis. Adjudications of other cases must depend upon the record in those cases. See Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (2012) (denying motion for review of a decision

---

[3] While the outcome in Murphy, a denial of attorneys' fees and costs, is consistent with the outcome in this decision, also a denial of attorneys' fees and costs, Murphy does not require this result. Other special masters might reasonably reach different conclusions, especially when the nature of the inconsistency between versions of events differs. Cf. SiOnyx LLC v. Hamamatsu Photonics K.K., 981 F.3d 1339, 1355 (Fed. Cir. 2020) (indicating that while a district court "may have been within its right" to award attorneys' fees pursuant to 35 U.S.C. § 285, the denial of fees was not an abuse of discretion).

finding no reasonable basis and affording special masters "maximum" discretion in this context).

## V.     Conclusion

Mr. Hoerth's eligibility for an award of attorneys' fees and costs depends upon his establishing a reasonable basis for the claim set forth in the petition. While the standard for showing reasonable basis is lower than the preponderance of the evidence (and therefore, easier to satisfy), Mr. Hoerth has failed to present sufficient objective evidence that would ground a finding of reasonable basis that Ms. Hoerth's symptoms began after his vaccination. Accordingly, Mr. Hoerth's motion for an award of attorneys' fees and costs is DENIED.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master